UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA CUEVAS,<br><br>            Plaintiff,<br><br>    v.<br><br>AL ROWHANNI SALAHALDEEN ABDO, *et al.*,<br><br>            Defendants. | Case No.   1:24-cv-01515-JLT-CDB<br><br>FINDINGS AND RECOMMENDATIONS TO DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS<br><br>(Docs. 1, 6)<br><br>14-DAY DEADLINE |

**Background**

On December 12, 2024, Plaintiff Joshua Cuevas filed this case against Defendants Al Rowhanni Salahaldeen Abdo, doing business as Salah's Store, and Abdo Alrowhany, alleging violations of the American with Disabilities Act (ADA), California's Unruh Civil Rights Act, and other state law causes of action. (Doc. 1). These claims stem from alleged barriers Plaintiff encountered while visiting a facility owned, operated, or leased by Defendants. *Id.* at 3. No Defendant has appeared.

On December 13, 2024, the undersigned ordered Plaintiff to show cause why the Court should not decline to exercise supplemental jurisdiction over his Unruh Act claim in light of the Ninth Circuit's decision in *Vo v. Choi*. (Doc. 5); *Vo v. Choi*, 49 F.4th 1167 (9th Cir. 2022)

1

1  (affirming a district court's decision to decline supplemental jurisdiction over an Unruh Act
2  claim); *see* 28 U.S.C. § 1367(c). Plaintiff timely filed a response to the Court's show cause order
3  on December 30, 2024. (Doc. 6). For the reasons given below, the undersigned will recommend
4  that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and
5  dismiss these claims without prejudice to Plaintiff's refiling in state court.

**Governing Legal Standards**

Under 28 U.S.C. § 1367(a), a court that has original jurisdiction over a civil action "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Ninth Circuit has concluded that ADA and Unruh Act claims that derive from a common nucleus of operative fact "form part of the 'same case or controversy' for purposes of § 1367(a)." *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021).

However, even where supplemental jurisdiction over a claim exists under § 1367(a), the Court may decline jurisdiction over the claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c)(1)-(4).

Pertinent here, a court deciding whether to apply § 1367(c)(4) must undertake "a two-part inquiry." *Arroyo*, 19 F.4th at 1210. "First, the district court must articulate why the circumstances of the case are exceptional within the meaning of § 1367(c)(4)." *Id.* (citations and internal quotation marks omitted). "Second, in determining whether there are compelling reasons for declining jurisdiction in a given case, the court should consider what best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine

1  articulated in [*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)]." *Id.* (citations and
2  internal quotation omitted).

3  After considering § 1367(c)(4) and California's requirements for bringing Unruh Act
4  claims, "numerous district courts in California 'have declined to exercise supplemental
5  jurisdiction over Unruh Act . . . claims brought alongside ADA claims.'" *Block v. Cal.-Fresno*
6  *Invest. Co.*, No. 1:22-cv-1419 JLT SAB, 2023 WL 8675398, at 4 (E.D. Cal. Dec. 15, 2023)
7  (quoting *Rutherford v. Nuway Ins. Agency Inc.*, No. SACV 21-00576-CJC-JDE, 2021 WL
8  4572008, at 1 (C.D. Cal. Apr. 1, 2021)). Underlying these decisions is "the recent confluence of
9  several California-law rules [that] have combined to create a highly unusual systemic impact on
10 ADA-based Unruh Act cases that clearly threatens to have a significant adverse impact on
11 federal-state comity." *Arroyo*, 19 F.4th at 1211.

12 Notably, Congress adopted the ADA to address the discrimination encountered by persons
13 with disabilities, providing a private cause of action to seek injunctive, but not monetary, relief.
14 *See id.* at 1205 (discussing background and relief available under the ADA). And the Unruh Act
15 likewise prohibits disability discrimination, containing a provision, Cal. Civ. Code § 51(f), stating
16 that a violation of the ADA also violates the Unruh Act. However, unlike the ADA, the Unruh
17 Act allows a plaintiff to recover "up to a maximum of three times the amount of actual damage
18 but in no case less than four thousand dollars." Cal. Civ. Code § 52(a).

19 In response to perceived abuses of the Unruh Act, California has enacted requirements for
20 bringing such claims, which requirements the Ninth Circuit has assumed, without deciding,
21 "apply only in California state court." *Vo*, 49 F.4th at 1170. For example, provisions were added
22 (1) regarding the contents of demand letters, Cal. Civ. Code § 55.31; (2) imposing heightened
23 pleading requirements, Cal. Civ. Code § 425.50(a); and (3) requiring an additional filing fee of
24 $1,000 for so called "high-frequency litigants," Cal. Gov't Code § 70616.5(b), *see* Cal. Civ. Code
25 § 425.55(b) (defining a high-frequency litigant to include "[a] plaintiff who has filed 10 or more
26 complaints alleging a construction-related accessibility violation within the 12-month period
27 immediately preceding the filing of the current complaint alleging a construction-related
28 accessibility violation").

All of these requirements[1] apply to claims alleging a construction-related accessibility violation, defined as involving "a provision, standard, or regulation under state or federal law requiring compliance with standards for making new construction and existing facilities accessible to persons with disabilities," including those related to the ADA. Cal. Civ. Code § 55.52(a)(1), (6); *see* Cal. Civ. Code § 55.3(a)(2). By enacting such restrictions, California has expressed a "desire to limit the financial burdens California's businesses may face from claims for statutory damages under the Unruh Act." *Arroyo*, 19 F.4th at 1209 (internal quotations omitted). However, "Unruh Act plaintiffs have evaded these limits by filing in a federal forum in which [they] can claim these state law damages in a manner inconsistent with the state law's requirements." *Id.* at 1213 (internal quotation omitted). Consequently, "the procedural strictures that California put in place have been rendered largely toothless, because they can now be readily evaded." *Id.*

Recently, the Ninth Circuit provided substantial guidance on this issue in *Vo v. Choi* in affirming a district court's order denying supplemental jurisdiction over an Unruh Act claim under § 1367(c)(4). *Vo*, 49 F.4th at 1168. In that case, the district court declined supplemental jurisdiction over the Unruh Act claim after giving the plaintiff the opportunity to respond and before addressing the merits of the case. *Id.* at 1168-69. In reviewing the district court's decision, the Ninth Circuit held that the district court sufficiently explained why the circumstances of the case were exceptional under § 1367(c)(4), agreeing with the district court that "it would not be 'fair' to defendants and 'an affront to the comity between federal and state courts' to allow plaintiffs to evade California's procedural requirements by bringing their claims in federal court." *Id.* at 1171. The Court also affirmed the district court's finding that the balance of the *Gibbs* values—economy, convenience, fairness, and comity—provided compelling reasons to decline supplemental jurisdiction, stating that "the district court [properly] analyzed Vo's situation under the *Gibbs* values and determined that the values of fairness and comity favored not retaining jurisdiction over the claim." *Id.* at 1172. Accordingly, "[g]iven these very real concerns, in

---

[1] Cal. Civ. Code § 55.31(a); Cal. Civ. Code § 425.50(a); Cal. Gov't Code § 70616.5(a).

4

addition to the deferential standard of review, [the Ninth Circuit saw] no reason to hold that the district court abused its discretion in determining there were compelling reasons to decline jurisdiction over the Unruh Act claim." *Id.*

With these legal standards in mind, the Court addresses whether the relevant considerations of § 1367(c)(4) warrant declining the exercise of supplemental jurisdiction over Plaintiff's Unruh Act claim.

**Discussion**

The Court begins with the first part of the two-step inquiry under § 1367(c)(4)—whether the circumstances here are exceptional. *Vo*, 49 F.4th at 1171.[2]

As discussed above, California has enacted various requirements that apply to claims alleging a construction-related accessibility violation. And if the Court were to exercise jurisdiction over Plaintiff's Unruh Act claim, Plaintiff would be permitted to avoid these requirements. *See Arroyo*, 19 F.4th at 1213 (noting that potential evasion of California's requirements met exceptional-circumstances prong of § 1367(c)(4)). Further, such evasion would undermine California's policy interests in enforcing its requirements—providing monetary relief but limiting burdens on small businesses and disincentivizing plaintiffs' attorneys from obtaining "monetary settlements at the expense of forward-looking relief that might benefit the general public." *Id.* In his response to the Court's show cause order, Plaintiff and his counsel offer scant argument for why such circumstances should not be deemed exceptional, and there is "little doubt that the first prong [under § 1367(c)(4)] is satisfied here." *Vo*, 49 F.4th at 1171.

Turning to the second part of the inquiry—whether there are other compelling reasons for declining jurisdiction—the Court considers the *Gibbs* values of economy, convenience, fairness,

---

[2] The Court notes that Plaintiff's filing and supporting declarations in response to the Court's show cause order (Docs. 6, 6-1, 6-2) appear largely boilerplate (*i.e.*, substantially identical) to filings Plaintiff and his counsel have made in response to similar orders to show cause in the Central District. *See, e.g., Mena v. Ganahl Lumber Co.* (8:24-cv-01819-SB-DFM) (Doc. 11); *Ventura v. Tripact, Inc.* (8:24-cv-01821-MEMF-KES) (Doc. 11); *Gonzalez v. Roberts* (8:24-cv-01830-JLS-ADS) (Doc. 12); *Mena v. Laguna Canyon Smog, Inc.* (8:24-cv-01839-WLH-DFM) (Doc. 13). Additionally, they are substantially identical to the response to similar orders in this Court. *See, e.g., Cuevas v. Sonder* (1:24-cv-1151-JLT-CDB) (Doc. 6).

and comity. *Vo*, 49 F.4th at 1171. Importantly, this case is an early stage of the litigation—no Defendant has appeared and Plaintiff's claims have not been addressed. *See Arroyo*, 19 F.4th at 1214 (noting that the *Gibb*'s values did not support declining supplemental jurisdiction where the case was at a "very late stage"). Thus, this is not a case "where it makes no sense to decline jurisdiction . . . over a pendent state law claim that that court has effectively already decided." *Id.* Notably, Plaintiff makes no argument that the stage of this case warrants exercising jurisdiction.

Moreover, in light of the above discussion of California's requirements for Unruh Act claims, it would not be fair, nor would comity be served, by allowing Plaintiff's Unruh Act claim to proceed without the state court being able to enforce its policy interests as reflected in its various procedural requirements. *Id.* at 1213 (noting "comity-based concerns that California's policy objectives in this area were being wholly thwarted" by plaintiffs being able to bring Unruh Act claims in Federal court).

On this issue, Plaintiff and his counsel acknowledge in their accompanying declarations (Doc. 6-1 at 2; Doc. 6-2 at 2) that they would be considered high-frequency litigants and would otherwise have to meet certain California requirements, such as paying the $1,000 filing fee in state court.[3] Plaintiff argues these requirements mean "little to the prosecution of a case," and that the facts required by the heightened pleading requirement are "readily available in discovery" or "required under Federal Rule 26's initial disclosure requirement." (Doc. 6 at 8). Plaintiff also argues that the $1,000 fee is intended to relieve the workload of the trial courts but "[i]ronically, though, the workload of the trial courts would be massively increased if this Court were to decline supplemental jurisdiction." *Id.* Lastly, Plaintiff argues the stay and early evaluation procedures required in state court for these cases are "almost identical in nature" as those available in the "Central District."[4] *Id.* at 8-9.

---

[3] While the Court acknowledges Plaintiff's concession, it need not determine whether he is in fact a high-frequency litigant. *Vo*, 49 F.4th at 1174 (noting that court was not required to determine whether the plaintiff was in fact a high-frequency litigant). In all events, from a review of filings in this district and the Central District, it does not appear to be a close call whether Plaintiff and counsel are high-frequency litigants.

[4] Further confirming the Court's characterization of the filings of Plaintiff and his counsel

6

Notwithstanding that this action is in the Eastern District, the Court notes it need only determine whether California's requirements are implicated, not whether they are in fact met. As the Ninth Circuit noted in *Vo*, whether a Plaintiff "has satisfied the heightened pleading requirements" imposed in California is a question for the state court because "[f]orcing the district court to determine if [this is] in fact true would itself run afoul of the *Gibbs* values— especially comity," and would deprive California of playing its "critical role in effectuating the policies underlying [its] reforms." *Vo*, 49 F.4th at 1173-74 (internal citation omitted).

Next, Plaintiff argues that requiring him to bring a second action in state court would be duplicative, would increase the cost as he would be subject to a $1,000 filing fee as a high-frequency litigant and, since "defendants take ADA cases filed in federal courts a lot more seriously," it would result in them not focusing on "swiftly remediating any and all ADA barriers at issue," thereby wasting time for all parties and the Court. (Doc. 6 at 5-7).

As an initial matter, this argument improperly assumes that Plaintiff will be successful in this action. However, even accepting such an assumption, the fact that the litigation could prove duplicative or increase costs does not, in light of the other considerations, warrant retaining jurisdiction. As one court has concluded, "if plaintiff legitimately seeks to litigate this action in a single forum, plaintiff may dismiss this action and refile it in a state court in accordance with the requirements California has imposed on such actions." *Garibay v. Rodriguez*, No. CV 18-9187 PA (AFMX), 2019 WL 5204294, at 6 (C.D. Cal. Aug. 27, 2019). Moreover, it is California's prerogative to impose a heightened filing fee for high-frequency litigants in an effort to curb abuses of the Unruh Act at the risk of the fee being ultimately paid by defendants. It would undermine comity and fairness were Plaintiff permitted to proceed with his Unruh Act claim in light of California's policy concerns.

In his response to the Court's order to show cause (Doc. 6), Plaintiff does not acknowledge *Vo*, but instead, cites and relies on cases predating this most recent published

---

as "boilerplate," the undersigned repeatedly has pointed out that counsel's filings incorrectly refer to this Court as the "Central District." *See Acevedo v. Akari* (1:24-cv-01199-JLT-CDB) (Doc. 5 at 7); *Cuevas v. Sonder* (1:24-cv-1151-JLT-CDB) (Doc. 7 at 6); *Cuevas v. HF & CG Holdings, et al.* (1:24-cv-1175-JLT-CDB) (Doc. 7 at 6-7).

1    pronouncement by the Ninth Circuit addressing a district court's discretion to decline
2    supplemental jurisdiction of Unruh Act claims.
3           For example, Plaintiff cites to *Kohler v. Rednap, Inc.* (794 F. Supp. 2d 1091 (C.D. Cal.
4    2011)), for the proposition that state law claims do not substantially predominate in litigation
5    involving both ADA and Unruh Act claims, as they are mostly based on ADA violations. (Doc. 6
6    at 3-4 citing *id.* at 1096). Plaintiff also cites *Kohler* for the holding that "fairness favored keeping
7    the Unruh claim in federal court 'rather than a separate, and largely redundant, state-court suit.'"
8    (Doc. 6 at 5 citing *id.*). Finally, Plaintiff cites this pre-*Vo*/*Arroyo* case to argue that plaintiffs'
9    "forum shopping" by filing ADA and Unruh Act cases in federal court "does not constitute a
10   'compelling reason' for declining jurisdiction" and "[n]othing bars [p]laintiff from frequently
11   invoking a federal forum to remedy ADA violations." (Doc. 6 at 7-8 citing *id.*).
12          While Plaintiff acknowledges *Arroyo* (Doc. 6 at 5-6), he cites *Gibbs* for the unremarkable
13   proposition that a district court retains discretion to exercise supplemental jurisdiction over state
14   law causes of action that strongly implicate questions of federal policy.  *Id.*  But in *Vo*, the Ninth
15   Circuit rejected this type of argument in affirming the district court's finding that the balance of
16   the *Gibbs* values—economy, convenience, fairness, and comity—provided compelling reasons to
17   decline supplemental jurisdiction.  *Vo*, 49 F.4th at 1172 ("the district court [properly] analyzed
18   *Vo*'s situation under the *Gibbs* values and determined that the values of fairness and comity
19   favored not retaining jurisdiction over the claim.").
20          Accordingly, in light of the two-step inquiry under § 1367(c)(4), the Court concludes that
21   the circumstances of this case are exceptional and there are other compelling reasons to decline
22   supplemental jurisdiction over Plaintiff's Unruh Act and related state law claims.  *See, e.g.*,
23   *Orosco v. Monrroy Enters. LLC*, No. 2:23-cv-07818-MEMF (KSx), 2023 WL 10407115, at *5
24   (C.D. Cal. Nov. 30, 2023) (declining to exercise supplemental jurisdiction over and dismissing
25   Plaintiff's California Unruh Act, Disabled Persons Act, Health & Safety Code and negligence
26   claims following *Vo/Arroyo* analysis); *Kim v. Vegara*, No. EDCV 22-281 JGB (SHKx), 2022 WL
27   17080182, at *5 (C.D. Cal. Oct. 5, 2022) (same); *Benford v. Hall*, No. CV 22-03337-RSWL-ASx,
28   2022 WL 20273588, at *3 & n.3 (C.D. Cal. July 18, 2022) (same).

**Conclusion and Recommendation**

For the reasons given above, IT IS RECOMMENDED as follows:

1. The Court DECLINE to exercise supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(c)(4).
2. Plaintiff's Unruh Act, Disabled Persons Act, Health & Safety Code and negligence claims be dismissed without prejudice to Plaintiff's filing of these claims in state court.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 2, 2025**                              _____
                                                                          UNITED STATES MAGISTRATE JUDGE